## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| VICTOR DE LA TORRE, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:23-cv-03203-PX |
| DOROTHY FINK, Acting Secretary, | * | |
| United States Department | * | |
| of Health and Human Services, | * | |
| | * | |
| Defendant. | * | |
| | *** | |

## MEMORANDUM OPINION

Pending in this employment discrimination case is a motion to dismiss or, in the alternative, for summary judgment filed by Defendant Dorothy Fink, Acting Secretary of the United States Department of Health and Human Services.[1] ECF No. 15. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, Defendant's motion to dismiss is granted in part and denied in part.

## I.    Background[2]

Plaintiff Victor De La Torre ("De La Torre") pursues five counts against his employer, the National Institutes of Health ("NIH"): (1) Religious Discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*.; (2) Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.; (3) Racial Discrimination under Title VII, 42 U.S.C. § 2000e, *et seq*.; (4) Interference with the FMLA, 29 U.S.C. § 2601 *et seq*.; (5) Retaliation in

---

[1] The Verified Amendment Complaint named Xavier Becerra, former Secretary of HHS, as Defendant. ECF No. 5. Dorothy Fink now serves as Acting HHS Secretary ("Acting Secretary"). Pursuant to Fed. R. Civ. P. 25(d), Acting Secretary Fink is automatically substituted as a party to this action.

[2] The Court accepts the alleged facts as true and most favorably to De La Torre. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

Violation of the WPA, 5 U.S.C. § 2302(B)(8).  Regrettably, the Amended Complaint is less than a model of clarity.  The factual recitations repetitive, and at critical junctures, non-specific and not in chronological order.  To best assess the sufficiency of the claims, the Court will summarize the operative facts as they pertain to each count.

At all relevant times, De La Torre was the manager of the Enterprise Business Application Services Division within the Center for Information Technology at NIH.  ECF No. 5 ¶ 9.  Xavier Soosai ("Soosai") directly supervised De La Torre, with Stacie Albourn ("Albourn") and Andrea Norris ("Norris") serving as second-level supervisors.  *Id.* ¶¶ 33, 44 & 50.  De La Torre holds a Doctorate in Business Administration and Masters' degrees in IT Management and Business Administration and is a decorated military veteran.  *Id.* ¶¶ 24–25.  At NIH, he supervises 27 federal civilian employees and 250 contractors and oversees $336 million in budgeted programs.  *Id.* ¶¶ 27 & 29.  De La Torre's General Schedule, or "GS" level, is 15—the highest pay grade available to federal employees.  *Id.* ¶ 27.  Until 2022, De La Torre had always received exceptional performance reviews from his supervisors.  *Id.* ¶ 31.  De La Torre identifies his race as Mexican American[3], his religion as Roman Catholic, his national origin as Mexican, and his color as brown.  *Id.* at 1.

### A.  Religious Discrimination

At some point in 2022, Norris evidently turned hostile toward De La Torre*,* prompting him to report his concerns to Soosai.  ECF No. 5 ¶ 33.  Soosai responded first by asking De La

---

[3]      Technically, "Mexican American" is not a race but an ethnicity.  The Census recognizes five races: "White," "Black or African American," "American Indian or Alaska Native," "Asian," and "Native Hawaiian or Other Pacific Islander."  *About the Topic of Race*, U.S. Census Bureau (Dec. 20, 2024), http://www.census.gov/topics/population/race/about.html.  However, for purposes of Title VII, a plaintiff who alleges employment discrimination based on Hispanic ethnicity can state a claim of racial discrimination.  *See Reyes v. Waples Mobile Home Park Ltd. P'ship*, 903 F.3d 415, 424 n.3 (4th Cir. 2018) (quoting *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016) ("Most courts have assumed that Hispanics [and Latinos] constitute a 'protected class' [under Title VII] but without saying whether that protection derives from race or national origin.").  The Court, therefore, construes the race claim as based on De La Torre's Hispanic ethnicity.

Torre if he is "Christian," and then said only if De La Torre was a Christian would he consider De La Torre "an ally." *Id.* ¶ 34. De La Torre asked Soosai what he meant by that comment, and Soosai said he too had been bullied by Andrea Norris, specifically she demanded that Soosai increase performance review scores for three White employees. *Id*. ¶ 35. Soosai also told De La Torre that those "white employees" had betrayed him "just like Judas of Iscariot had betrayed Jesus." *Id*. Soosai's comments made De La Torre uncomfortable. *Id.* ¶ 128. Thereafter, De La Torre did not want to meet directly with Soosai. *Id.* ¶ 130. Nonetheless, Soosai continued to demand that he and De La Torre meet as part of De La Torre's ongoing job responsibilities. *Id.* ¶ 131.

### B.    Racial Discrimination

De La Torre asserts that Soosai, Norris, Albourn, and coworker Asmahan Limansky ("Limansky") "harassed and bullied" him, but the Complaint gives little factual context. *Id.* ¶ 36. De La Torre characterizes his workplace as generally "divisive and intimidating" for those who are not White nor Asian. *Id.* ¶ 37. And he asserts that come September 2022, his work received extensive scrutiny, which he believes was on account of his race. *Id.* ¶ 105(b)(xxv). As for the facts supporting these impressions, the Amended Complaint avers the following.

On September 12, 2022, Soosai told De La Torre that he was on Norris' "negative list," which, according to Soosai, includes only those with "brown or black skin tone." *Id.* ¶ 40. Because De La Torre is not White, Soosai advised that he should do his best to comply with Norris's directives. *Id.* Limansky, for her part, told De La Torre that she had grown up in Lebanon amidst active gun fire and was not afraid of anyone. *Id.* ¶ 43. De La Torre took the comment to mean that any complaints raised about the toxic environment would be met with violence. *Id.*

During this time, the difficulties presented by the challenging work environment began to affect De La Torre's ability to do his job. *Id.* ¶ 36.  He describes that his coworkers and supervisors, including Limansky and Albourn, interfered with his job performance by "yelling, taunting, and ordering [him] to not engage with customers." *Id.*  In late October 2022, De La Torre evidently reported "the divisive, harassing, bullying, and intimidating behavior" that caused his performance to deteriorate. *Id.* ¶ 47.  De La Torre again asked Soosai for help in quelling the hostile environment to no avail. *Id.* ¶ 106(a)(ii)(2).  De La Torre next met with Albourn to discuss his concerns. *Id.* ¶ 49.  Albourn "brushed off" the complaints and commented that she did not believe anyone "meant any wrong." *Id.* ¶ 51.

### C.     Title VII Retaliation

On October 21, 2022, De La Torre contacted the NIH Equal Employment Opportunity ("EEO") Office, which began to immediately investigate his complaints of discrimination. *Id.* ¶ 14.  He next initiated a formal EEO complaint on January 31, 2023, *Id.* ¶ 16, and thereafter amended his complaint in March and again in April. *Id.* ¶¶ 17 & 18.

Within the first month of De La Torre's formal action, Soosai began soliciting "feedback" from customers and NIH employees, ostensibly in preparation for his annual evaluation. *Id.* ¶¶ 56–57.  Days later, De La Torre's Contracting Officer's Representative ("COR") credentials were subject to review and his COR "Level 3" certification had been removed. *Id.* ¶ 105(b)(xi–xii).  Next, on March 8, 2023, De La Torre learned he had been removed as the COR for two longstanding contracts. *Id.* ¶ 106(a)(i).  Additionally, on March 31, 2023, De La Torre received a "written counseling letter," based on negative performance feedback which De La Torre asserts was wrongly obtained. *Id.* ¶ 107(a)(ii).

On or around March 2023, De La Torre also received an annual performance review score of 3.67, a score significantly lower than he had received in prior years. *Id.* ¶ 140. In the narrative section of the performance review, Soosai commented that "we noted several opportunities for improvement based on the feedback from [De La Torre's] customers and stakeholders." *Id.* ¶ 58. One of the solicited feedback stated, "[i]f I were to rate him, I would rate him a 'n'." *Id.* ¶ 59. De La Torre interpreted this comment as invoking a racial epithet because there had been no performance-based criteria associated with the letter "n". *Id.* ¶ 61.

### D.    Family and Medical Leave Act ("FMLA") Claim

In July 2023, De La Torre lost a loved one suddenly and needed to travel to California on short notice. *Id.* ¶¶ 71–72. He requested leave from July 16 to 29, 2023, which in his view, should have been granted as "Family Friendly Leave" or leave under the FMLA. *Id.* ¶ 92(a). But instead, he was forced to use sick leave. *Id.* ¶ 85. De La Torre subsequently requested additional leave pursuant to the FMLA for August, and again the request was denied. *Id.* ¶¶ 85 & 92(b–c). All told, De La Torre took leave for various periods from July to September 2023. *Id.* For none of those periods was he permitted to use FMLA-protected leave. *Id.* ¶¶ 92–93. De La Torre also asserts that in October and November, he took leave for certain days related to his daughter's diabetes treatment that he contends should have been FMLA-protected leave. *Id.* ¶ 94.

### E.    Whistleblower Protection Act ("WPA") Claim

Sometime before October 2022, De La Torre reported to his division's leadership that money had been improperly used in conflict with the stated terms of a contract. *Id.* ¶ 95. Shortly after, he was prohibited from communicating with outside customers on the performance

of contracts.  *Id.* ¶ 102.  After leadership learned of De La Torre's reporting, he was wrongfully blamed for invoicing errors and eventually removed from that particular contract.  *Id.* ¶ 98.

## II.    Analysis

The Government now moves to dismiss the Amended Complaint entirely.  ECF No. 15. As for the FMLA and WPA claims (Counts Four and Five), the Government argues that the Court lacks jurisdiction.  ECF No. 15-1 at 2.  The Government also contends that the remaining claims (Count One to Three) fail on the merits.  *Id.*  The Court considers each argument in turn.

### A.    WPA Claim (Count Five)

The Government first argues that the Court lacks subject matter jurisdiction over the WPA claim because De La Torre failed to exhaust administrative remedies pursuant to the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq*.  ECF No. 15-1 at 20.  The Court treats the motion as one brought pursuant to Federal Rule of Civil Procedure 12(b)(1) which challenges the Court's limited subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1); *see United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009).  Whether the Court retains subject matter jurisdiction must be decided before reaching the merits of the case.  *See Jones v. Am. Postal Workers Union*, 192 F.3d 417, 422 (4th Cir. 1999).  The "burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction."  *Robb Evans & Assocs., LLC v. Holibaugh*, 609 F.3d 359, 362 (4th Cir. 2010); *accord Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). The Court views complaint facts most favorably to the plaintiff.  *See Lovern*, 190 F.3d at 654. The Court also "may consider evidence outside the pleadings" to ascertain whether it has subject matter jurisdiction.  *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The Court may dismiss for lack of jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law."  *Evans*, 166 F.3d at 647.

The CSRA "establishes a framework for evaluating personnel actions taken against federal employees." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012). The Act "provide[s] an integrated scheme of administrative and judicial review of employment decisions involving government employees," which depends on the severity of the challenged personnel action and the nature of the complaint. *Chin-Young v. United States*, 774 F. App'x 106, 111 (4th Cir. 2019) (internal quotations omitted).

"The CSRA and the WPA are integrated into a single statutory scheme." *Kerr v. Jewell*, 836 F.3d 1048, 1058 (9th Cir. 2016). Read together, the statutes prohibits certain federal employees from taking adverse personnel actions against "any employee" for reporting "any violation of any law, rule, or regulation, or . . . gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A).

Pursuant to the CSRA, covered employees must first bring their WPA claims before the Office of Special Counsel ("OSC") and then the Merit Systems Protection Board ("MSPB"). *See* 5 U.S.C. § 1214(a)(3); *see also* § 1221(a), (b). However, if the adverse employment action constitutes a "major personnel action" such as termination, loss of pay or demotions, the employee may bring his challenge directly to the MSPB, and next may seek judicial review in the Federal Circuit. *Zachariasiewicz v. U.S. Dep't of Just.*, 48 F.4th 237, 242 (4th Cir. 2022) (quoting *Fleming v. Spencer*, 718 F. App'x 185, 186 (4th Cir. 2018)) (first citing 5 U.S.C. § 7513(d); and then citing 5 U.S.C. § 7703). Pertinent here, WPA violations "generally fall within the latter category of personnel actions that must be pursued before the OSC prior to the MSPB." *Zachariasiewicz*, 48 F.4th at 242; s*ee* 5 U.S.C. §§ 1221(a), 1214(a)(3). Thus, it appears that for

the WPA claim alone, De La Torre's possible avenues of relief do not include review by this Court.

De La Torre does not meaningfully contest that he is a CSRA-covered employee. *See* ECF No. 5 ¶¶ 6, 14–19, 95–104, 162–170. Nor does he dispute that this Court does not retain jurisdiction over a stand-alone WPA claim. Rather, he contends that because he brings a "mixed case" that includes both discrimination claims and a WPA action, this Court retains jurisdiction over both. ECF No. 18 at 5. De La Torre is mistaken.

A "mixed case" is a narrow exception to the rule that CSRA-related claims are not generally afforded review in the District Court. *Id.* at 46; *see* 5 U.S.C. §§ 7702(b)(1) ("Except as provided . . . a petition to review a . . . final decision of the [MSPB] shall be filed in the United States Court of Appeals for the Federal Circuit."). To qualify as a "mixed case," the personnel action must be "serious enough to appeal to the MSPB *and* allege[] the action was based on discrimination." 568 U.S. at 44. After exhaustion of the discrimination claim, a mixed case can proceed in district court. *Id.*

The CSRA, however, permits only serious personnel actions to proceed directly to the MSPB; specifically, "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less." 5 U.S.C. § 7512*; see also* 5 C.F.R. § 1201.3 (describing serious personnel actions that are appealable to the MSPB, including termination, pay reduction, suspensions for more than 14 days, or involuntary resignation or retirement). For all other personnel actions, an employee must first proceed before the OSC before the MSPB. *See Zachariasiewicz*, 48 F.4th at 243. And so, all other personnel actions cannot proceed as a "mixed case." *Id.* at 243–44 (holding that a mixed case involves only a "serious personnel action" that can be challenged before the MSPB in the first instance).

Turning to De La Torre's claim, the worst among the alleged retaliatory acts concerns his reduction in performance score (not pay), and removal from certain contracts (not removal from his job).  He alleges no other adverse action that can be appealed to the MSPB in the first instance.  And so, his WPA claim cannot be the basis for a "mixed case."  *See Zachariasiewicz*, 48 F.4th at 242–43.  The claim is dismissed for lack of jurisdiction.

### B.    FMLA Claim (Count Four)

The Government next argues that as to the FMLA claim, it enjoys sovereign immunity from suit.  ECF No. 15-1 at 22.  "[S]overeign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."  *Cunningham v. Gen. Dynamics Info. Tech., Inc*., 888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009)).  *Cf. Stockslager v. D.C. Nat'l Guard*, 703 F. Supp. 3d 695, 697 (D. Md. 2023).  The Government, however, may waive its sovereign immunity if it does so expressly.  *See Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728 (1982).  Where Congress consents to suit within any given statutory framework, then an individual retains a private cause of action against the Government.  *Id.*

The FMLA grants private and government employees certain leave rights under qualifying circumstances.  *See, e.g.*, 29 U.S.C. § 2612(a)(1); 5 U.S.C. § 6382(a)(1).  Title II of the FMLA, 5 U.S.C. § 6381 *et seq*., covers leave for federal civil service employees who have more than twelve months of service.  And Title I, 29 U.S.C. § 2601 *et seq.*, covers leave for private employees and federal employees not covered by Title II.  *See* 29 C.F.R. § 825.109.

De La Torre does not dispute that he is a civil service employee, and the Amended Complaint makes plain he has served the Government for more than twelve months.  ECF No. 5 ¶ 31.  Thus, any entitlement to FMLA leave falls under Title II.  Importantly, although Title I

expressly provides a private right of action against an employer for a FMLA violation, *see* 29 U.S.C. § 2617(a)(2), Title II does not. *See* 5 U.S.C. §§ 6381–6387. Accordingly, because the Government has not waived its immunity from suit for violations of Title II, and De La Torre's claim falls under that Title, this Court cannot hear the claim. *Davis v. Thompson*, 367 F. Supp. 2d 792, 800 (D. Md. 2005) (citing *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997)).

De La Torre does not contest that he is a Title II employee. Instead, he argues that *Hannah P. v. Coats*, 916 F.3d 327 (4th Cir. 2019) compels a different result. But in *Hannah P.*, the Government admitted the plaintiff had been covered under Title I—not Title II— of the FMLA. *See Hannah P. v. Coats*, No. 1:16-cv-01030-LMB-IDD, ECF No. 65 at ¶ 71, (E.D. Va. June 10, 2017) and ECF No. 71 at ¶ 71 (E.D. Va. June 23, 2017). The Fourth Circuit was asked to review only whether plaintiff qualified for the FMLA-related leave, not whether the Government was immune from suit. *See Hannah P.*, 916 F.3d at 336. De La Torre, on the other hand, can bring the claim only under Title II, for which no private right of action exists. *See Davis v. Thompson*, 367 F. Supp. at 800 (D. Md. 2005). Thus, his claim must be dismissed.

### C.     Remaining Claims (Counts One to Three)

For the Counts One through Three, the Government urges the Court to dismiss for failure to state a claim or alternatively for summary judgment to be granted in its favor. ECF No. 15. A motion styled in the alternative implicates the court's discretion under Federal Rule of Civil Procedure Rule 12(d). *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011), *aff'd sub nom.*, *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, *Md.*, 684 F.3d 462 (4th Cir. 2012). In advance of converting a motion to dismiss to one for summary judgment, the Court must give the parties some indication that it will treat the motion as one for summary judgment and afford them "a reasonable opportunity for discovery." *Greater*

*Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d

264, 281 (4th Cir. 2013) (internal quotation marks and citations omitted).

      The Court recognizes that certain evidence has been generated through the EEO

investigation.  ECF No. 15-2.  However, the lion's share of the evidence amounts to affidavits

not tested by the adversarial process.  ECF Nos. 15-6, 15-6, 15-7, 15-8, 15-9, 15-10, 15-12, 15-

14, 15-16 & 15-20.  Moreover, De La Torre's Verified Amended Complaint, which itself can be

treated as "evidence," competes in material respects with the version of events described the

affidavits.  ECF No. 5; *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991) ("a *verified*

complaint is the equivalent of an opposing affidavit for summary judgment purposes…")

(emphasis in original).  But neither party has been afforded a "reasonable opportunity for

discovery" to include depositions that would likely flush out the parties' competing narratives.

Accordingly, summary judgment is premature, and the Court will treat the motion as one to

dismiss the claims.  *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir.

2006).

      When reviewing a complaint for sufficiency under Rule 12(b)(6), the Court must "accept

the factual allegations in the complaint as true and construe them in the light most favorable to

the nonmoving party."  *Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 145

(4th Cir. 2018).  However, the Court need not "credit a complaint's conclusory statements

without reference to its factual context," *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009), or "accept

as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286

(1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported

by mere conclusory statements.").  To survive a motion to dismiss, a complaint's factual

allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016). The Court may consider documents that are attached to, or incorporated by reference in, the complaint, or are otherwise integral to the allegations. *See E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

With this standard in mind, the Court considers the sufficiency of each claim.

### 1.        Religious and Racial Discrimination (Counts One and Three)

As to Count One, the Government principally argues that no facts make plausible that De La Torre had been adversely treated based on his religion. ECF No. 19 at 6. Because the Amended Complaint does not include allegations of direct discrimination, the Court applies the well-known burden shifting framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see also Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006). Under *McDonnell Douglas*, the employee must first make a prima facie showing that he is a member of a protected class who performed his job to the satisfaction of his employer, but nonetheless, suffered an adverse employment action in a manner that gives rise to an inference of discriminatory animus. *See Goode v. Cent. Va. Legal Aid Soc., Inc.*, 807 F.3d 619, 626 (4th Cir. 2015), *abrogated in part on other grounds by Bing v. Brivo Sys., LLC*, 959 F.3d 605, 611–12 (4th Cir. 2020) (discussing when an order is final and appealable). Importantly, the burden of pleading the prima facie case is "not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). That said,

some alleged facts must "nudge[]" the claim "across the line from conceivable to plausible."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

To support the religious discrimination claim, De La Torre points to Soosai's comments

that he would only be on De La Torre's side if De La Torre were a Christian.  ECF No. 5 ¶ 34.

From, this De La Torre contends, Soosai somehow treated him so poorly that De La Torre felt

"uncomfortable."  *Id.* ¶ 128.

The Court begins by acknowledging a recent relaxation of the "adverse employment

action" standard.  At the time the Government filed its motion to dismiss, an adverse action in

this Circuit had been confined to "discharge, demotion, decrease in pay of benefits, loss of job

title or supervisory responsibility, or reduced opportunities for promotion. . . ."  *Boone v. Goldin,*

178 F.3d 253, 255 (4th Cir. 1999), *abrogated by Muldrow v. City of St. Louis, Missouri*, 601 U.S.

346 (2024).  Since then, the United States Supreme Court in *Muldrow v. City of St. Louis,*

*Missouri*, 601 U.S. at 355 (2024), has reset the standard for assessing whether an employment

action is sufficiently adverse.  Now, "[t]o make out a Title VII discrimination claim, a transferee

must show some harm respecting an identifiable term or condition of employment."  *Id.*

However, the plaintiff need not show "substantial" harm, so long as the plaintiff makes plausible

that he was "treat[ed] worse" on account of a protected characteristic.  *Id.* at 347.; s*ee Cole v.*

*Group Health Plan*, 105 F.4th 1110, 1114 (8th Cir. 2024) (defining an adverse employment

action as a "disadvantageous change to the compensation, terms, conditions, or privileges of

employment because of a protected status" after *Muldrow*).

Even under this relaxed standard, however, the Amended Complaint fails as to the

religious discrimination claim.  At best, De La Torre was made to feel uncomfortable by

Soosai's remarks regarding his preference for Christians.  ECF No. 5 ¶ 34.  But feeling

"uncomfortable" does not amount to being treated worse on account of one's religion. *Cf.*
*Spriggs v. Public Serv. Comm'n of Md.*, 197 F. Supp. 2d 388, 393 (D. Md. 2002) (holding an
employment action that "merely causes an employee irritation or inconvenience" is not an
adverse employment action). Nor can the Court see how it would—De La Torre identifies as
Roman Catholic, so he is a Christian. Thus, presumably, Soosai would have been "on [De La
Torre]'s side," if faith mattered. This, combined with no clear adverse action taken on account
of his religion, means that the religious discrimination claim must be dismissed.

The race claim, however, fares differently. As with religious discrimination, the
Government argues that no facts make plausible De La Torre had been treated adversely because
of his race, color, or national origin. ECF No. 15-1 at 26. But Norris proclaimed general disdain
for minority workers and kept a "negative list" dominated by brown employees. ECF No. 5 ¶
40. At the same time, Norris directed Soosai to lower one of De La Torre's ratings without
justification. *Id.* ¶ 45. Last, because future compensation and employment opportunities are tied
to performance scores, *Id.* ¶ 150, De La Torre has suffered "some injury" related to his
employment terms and conditions. *Muldrow*, 601 U.S. at 355 (2024), *abrogating James v. Booz-
Allen & Hamilton, Inc.*, 368 F. 3d 371 (4th Cir. 2004). Thus, the racial discrimination claim will
proceed.

Alternatively, the Government contends that the claim fails because the Amended
Complaint does not allege any "comparators," or employees similarly situated to De La Torre
who received more favorable treatment. ECF No. 15-1 at 28. But comparator evidence is not
the only way to show adverse treatment on account of race—certainly not at the pleading stage.
*See Sillah v. Burwell*, 244 F. Supp. 3d 499, 512 (D. Md. 2017) (quoting *Roberts v. Coffey*, No.
CIV.A. DKC 10-3359, 2012 WL 2000353, at *4 n.11 (D. Md. June 4, 2012)). Where as here,

some facts nudge the claim from possible to plausible, even if not expressly by way of comparators, the claims survive dismissal.  The Court denies the motion as to the race discrimination claim.

> ### 2.    Retaliation Claim (Count Two)

As for the retaliation claim, De La Torre avers that after he filed his EEO complaint in January of 2023, Soosai issued him a "letter of counseling" and gave him a noticeably lower score for his 2022 annual evaluation as compared to prior years.  ECF No. 5 ¶¶ 54 & 170. Additionally, when De La Torre did not "drop" his EEO complaints at Soosai's urging, management prevented De La Torre from communicating directly with customers; Soosai also solicited negative commentary from De La Torre's coworkers and customers.  *Id*. ¶ 166.  This, the Government says, is not sufficient to make the retaliation claim plausible.  ECF No. 15-1 at 30.  The Court disagrees.

For a Title VII retaliation claim to survive dismissal, a plaintiff must make a prima facie showing that he engaged in protected activity; that the employer took adverse action against him; and a causal link exists between the two.  *See Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001); *see also Booth v. Cty. Exec.*, 186 F. Supp. 3d 479, 487 (D. Md. 2016).  Causation may be inferred when the adverse action follows close in time to the protected activity.  *See Roberts v. Glenn Indus. Grp., Inc*., 998 F.3d 111, 126 (4th Cir. 2021).  An employer action is sufficiently "adverse" if it would "dissuade[ ] a reasonable worker from making or supporting a charge of discrimination."  *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (internal quotation marks omitted).  If this prima facie showing is made, then the burden shifts to the employer to demonstrate a legitimate, non-retaliatory reason for its adverse action.  *See*

*Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 258 (4th Cir. 1998). The plaintiff bears the ultimate burden of demonstrating such reason is pretextual. *Id.*

The Government first asserts that the Amended Complaint pleads no sufficiently adverse action in response to De La Torre's protected activity. ECF No. 15-1 at 30. But shortly after De La Torre filed his EEO complaint, he received a less-than-favorable performance score and a letter of counseling. ECF No. 5 ¶¶ 54 & 170. He was also taken off longstanding projects, his clearance was revoked, and his duties pared down. *Id.* ¶¶ 105(b)(x–xv). These actions, alone or in combination, are sufficiently adverse to chill a reasonable employee from reporting prior discrimination.

Additionally, and contrary to the Government's contentions, ECF No. 15-1 at 31, these acts of alleged reprisal followed on the heels of De La Torre's EEO complaint. De La Torre first filed his EEO complaint in January 2023, and by March had received the lowest performance score in three years and a letter of counseling. ECF No. 5 ¶¶ 107(a)(i–ii). Thus, the adverse actions are sufficiently close in time to make plausible a causal connection between the two.

The Government lastly argues that even if De La Torre has made the prima facie case, the Government has offered legitimate non retaliatory reasons for the adverse action. ECF No. 15-1 at 31. The Government more particularly suggests that De La Torre's reduced performance scores and counseling letter were amply justified given the client and supervisor complaints lodged against him and his unwillingness to meet with Soosai. *Id.*

The Amended Complaint, however, alleges that none of these aspersions were legitimate, but rather were part and parcel of the ongoing discrimination he faced. For example, De La Torre takes issue with having been reprimanded for refusing to attend meetings with Soosai when it was Soosai's own discriminatory acts that prompted De La Torre to avoid meetings with

him in the first place.  ECF No. 5 ¶ 66.  And as for customer complaints, De La Torre argues that those against whom he accused of discrimination next thwarted his ability to do his job well.  *Id.* ¶ 102.  The reliability of the "feedback" is further undermined by the commenter who rated De La Torre an "n", given that plausibly this could be perceived as invoking a racial epithet.  *Id.* ¶ 59.  Because the same purported non-retaliatory reasons for adverse action are alleged to be themselves based on discriminatory animus, dismissal is not proper.  The claim survives challenge.

### III.    Conclusion

To summarize, the Court dismisses the WPA and FMLA claims for lack of jurisdiction. "Because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits," these claims are dismissed without prejudice.  *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).  The religious discrimination claim, however, will be dismissed with prejudice because the pleading deficiencies cannot be corrected by further amendment.  *See Cozzarelli v. Inspire Pharms., Inc*., 549 F.3d 618, 630 (4th Cir. 2008) (finding district court did not abuse discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *McLean v. United States*, 566 F.3d 391, 401 (4th Cir. 2009) ("Once a court has determined that the complaint is truly unamendable, a dismissal without prejudice is of little benefit to the litigant, as the claim cannot be made viable through reformulation.").  Accordingly, the Government's motion to dismiss is granted in part and denied in part.  ECF No. 15.  A separate Order follows.

| | |
|---|---|
| 2/11/2025 | /S/ |
| Date | Paula Xinis |
| | United States District Judge |